HERNÁNDEZ, APPELLANT, v. MEDINA ET AL., RESPONDENTS.

APPEAL from the District Court of Mayagüez.

No. 856.—Decided February 7, 1913.

JUDGMENT LIENS.—Judgment liens are created by statute, and in the absence of an express statutory provision judgments cannot be considered as constituting liens on real property in the modern sense of the term.

ID.—SUBSEQUENT CREDITS—CAUTIONARY NOTICES.—According to section 6 of the Act of March 8, 1906, the effect of a judgment lien is the same with regard to subsequent credits as that of cautionary notices made in attachments, sequestrations or executions by virtue of a judicial mandate, as provided in paragraph 4 of section 1824 of the Civil Code in connection with the Mortgage Law.

ID.—REGISTRY OF JUDGMENTS—INDEX OF JUDGMENTS.—In order that a judgment may constitute a lien upon all of the real property of the debtor situated within the district, it is necessay that it be recorded in the registry of judgments and entered in the index referred to in section 4 of the law governing the matter. In the absence of the latter requisite it does not produce such an effect.

COSTS—AMOUNT IN LITIGATION.—The trial court did not err in taking as a basis to determine the amount involved in the litigation for the purpose of taxing the costs the fact that this incidental issue arose in a suit wherein the judgment rendered was for an amount in excess of $1,400.

The facts are stated in the opinion.

The appellant appeared pro se.

The respondent did not appear.

MR. JUSTICE DEL TORO delivered the opinion of the court.

On February 15, 1912, Agustín Hernández Mena filed a motion in connection with the action brought by him against Julio Medina González in the District Court of Mayagüez for the collection of a sum of money, alleging that in that suit judgment was rendered on August 19, 1907, against the defendant for the sum of $1,480.95, with interest and costs, which judgment was entered in the judgment record of the Registry of Property of Mayagüez on January 17, 1910, as appears from a certified statement issued by the registrar of property which forms part of the record of the case.

The motion alleged further that of the total amount of the judgment the sum of $867.25 still remains unpaid; that for

the collection thereof the marshal of the district court levied upon all the right of the defendant in a house situated in Mayagüez, which is duly described; that the said house appeared recorded in the registry of property in favor of Francisco Forteza, who purchased it from Julio Medina González on June 13, 1910; that at the time the judgment was recorded in the judgment record the said house belonged to the defendant, Medina, and, therefore, became encumbered in accordance with the provisions of section 6 of an Act to provide the manner of creating judgment liens on immovable property, approved March 8, 1906.

In view of the foregoing, said Hernández Mena prayed the court to issue an order providing that Francisco Forteza be required to free the property from the lien within the period of 10 days by the payment of the $867.25 due, and that upon his failure to do so the record of the property in favor of Forteza be canceled in the registry of property.

On February 23, 1912, the court granted the prayer. Forteza was summoned and appeared in court and alleged that the property in question had been levied upon first by said Hernández Mena under execution proceedings for the enforcement of the judgment rendered August 19, 1907, in the suit brought by Hernández Mena against Medina and had been awarded to said Hernández at public auction in part payment of the judgment. That having become the owner of the house Hernández had it recorded in his favor in the registry and sold it to the defendant, Medina, and that the latter had it recorded in his favor in the registry and sold it to Forteza, who also recorded his title in the registry of property.

Hernández Mena admitted the facts as alleged by Forteza but maintained that he was entitled to the relief prayed for, and finally the court on March 9, 1912, reconsidered its former decision and overruled Hernández Mena's motion with costs against him.

This appeal is taken from that decision of the court.

From the facts stated it is clear that the question involved herein is the interpretation of the Judgment Lien Act of 1906, a law of great importance which should be carefully studied by parties interested in the transfer and encumbrance of real property and by members of the bar generally.

This Act creates a system of liens which to a certain extent is not clear and is in conflict with the system established in the Mortgage Law, which requires that liens upon each and every property affected be mentioned specifically.

Before proceeding with the construction of its provisions we deem it timely to point out the nature of judgment liens in accordance with American jurisprudence.

Supported by a long line of court decisions, Cyc. states that:

"The lien of a judgment does not constitute or create an estate, interest, or right of property in the lands which may be bound for its satisfaction; it only gives a right to levy on such lands to the exclusion of adverse interests subsequent to the judgment. Nor is it ordinarily a specific lien upon any specific real estate of the judgment debtor, but it is a general lien upon all his real property.

\*          \*          \*          \*          \*          \*          \*

"At common law the lands of a debtor were not liable to the satisfaction of a judgment against him, and consequently no lien thereon was acquired by a judgment. But as early as the year 1285, a British statute, by providing the writ of elegit (an order to the marshal to attach the property of the defendant), created for judgment creditors a rudimentary form of lien on lands, out of which the modern judgment lien has been evolved.

"Judgment liens are the creatures of statute; and in the absence of express legislative enactment judgments do not attach as liens upon real property in the modern sense of the term." See 23 Cyc., 1350 et seq.

A law enacted by the Legislature of Porto Rico in 1906, and which has been referred to already, covers the matter fully. Section 6 thereof says:

"When a judgment has been recorded and indexed, as provided for in the preceding sections, it shall at once operate as a lien upon all the immovable property of the defendant or defendants not exempt from execution situated in the district where such abstract is recorded, and upon the immovable property which the defendant or defendants may thereafter acquire in such district, and such lien shall be of like nature and preference as those mentioned in para-graph 4 of section 1824 of the Civil Code."

And section 1824, paragraph 4, of the Civil Code in force in 1906, reads as follows:

"Section 1824. With regard to determined real property and property rights of the debtor, the following are preferred:

\*        \*        \*        \*        \*        \*        \*

"4. Credits, of which a cautionary notice has been made in the registry of property by virtue of a judicial mandate, by reason of attachments, sequestrations, or execution of judgments, with regard to the property entered therein and only with regard to subsequent credits."

This section 1824 was amended in 1910 by section 15 of Act No. 37, the provisions of paragraph 4 remaining exactly the same except that it is marked No. 5 instead of No. 4.

The effect of section 6 of the Act relating to judgment liens, approved in 1906, clearly appears from its own terms. According to these it is sufficient to record the judgment in the judgment record referred to in section 3 and enter it in the index as provided for in section 4, so that it shall operate immediately as a lien upon all the immovable property of the defendant not exempt from execution situated in the district and upon all the immovable property which the defendant may thereafter acquire in such district. The effect of this lien is the same as that of the cautionary notice made by reason of attachments, sequestrations or execution of judgments by virtue of a judicial mandate with regard to subsequent credits provided for in paragraph 4, section 1824, of the Civil Code in connection with the Mortgage Law.

Having thus interpreted the law let us see how it should be applied to the specific case submitted to us for consideration.

The first thing we should investigate is whether the judgment rendered in *Hernández* v. *Medina* was entered in the judgment record and its index, because in acordance with the law only in that case would it constitute a lien upon the property of the debtor. The first, that is, the record in the judgment record of the Registry of Property of Mayagüez, appears to be alleged by the petitioner and admitted by the adverse party; but the second, the entry thereof in the index, does not appear to have been alleged or admitted or shown in any manner whatsoever in the transcript brought up to this court by the appellant, Hernández Mena.

This being the case, the prayer of the plaintiff falls of its own weight according to the clear and specific terms of section 6 of the act relating to the matter and the decisions of the courts.

"In many states it is provided by statute that judgments shall be duly recorded or docketed before they can become liens on the debtor's realty, and unless this requirement is complied with the judgment will not attach as a lien, at least as against subsequent purchasers or encumbrancers in good faith and without actual notice, although it may be otherwise as between the original parties. Under this rule it is the duty of the judgment creditor to see to it that his judgment is rightly and properly recorded or docketed, under penalty of losing his lien." 23 Cyc., 1353 and cases cited.

"Under statutes requiring indexes of judgments to be made, a judgment, although duly filed and recorded, is no lien on real estate unless it is also properly indexed." 23 Cyc., 1356 and cases cited.

This being the case, it is not necessary to enter upon the consideration and decision of the other questions involved in this case. The petition made by Hernández Mena on February 15, 1912, was clearly insufficient and the decision appealed from by virtue of which the said petition was finally dismissed should be affirmed.

Together with this another appeal was taken, to wit, from the decision approving the memorandum of costs. This memorandum, as it was filed by Forteza, consisted of the following items: $5 for secretary's fees, $3.40 for stamps and $50 for counsel's fees. Hernández Mena disputed the first item alleging that it amounted to only 55 cents. He made no objection to the second item but objected to the third on the ground that the value of the property in controversy, the house, did not amount to $500. On April 12, 1912, the court reduced the first item to $2.10, left the second intact, reduced the third to $30 and approved the memorandum for the total amount of $35.50.

An appeal was taken by Hernández Mena from this decision approving the memorandum, and in his brief he referred only to the item for counsel's fees, objecting thereto on the ground already stated. He gives no other ground for his objection. Notwithstanding that the house referred to appears to have been acquired and sold for $200 the petition made by Hernández, which is the origin of these appeals, was made for the purpose of requiring Forteza to pay more than $800 and was filed in connection with a suit in which the judgment exceeded $1,400, so taking as a basis these last amounts instead of the first one for the purpose of ascertaining the nature of the case, we are of the opinion that the district court did not commit any fundamental error affecting the legality of its decision.

For this reason the other appeal should also be dismissed and the judgment appealed from affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary, Wolf and Aldrey concurred.